Mr. Edo is appealing the District Court's decision granting summary judgment in favor of Government Employees, Insurance Company, Geico General, and Geico Indemnity. With respect to those three entities, first as to Government Employees, we believe the District Court erred with respect to Government Employees because it ignored Plaintiff Edo's argument that Government Employees took an adverse action by deciding to place Mr. Edo in a more expensive carrier. With respect to Geico General, we believe the District Court erred because it ignored the plain language of the Fair Credit Reporting Act, which provides that a denial of insurance applied for is an adverse action, and the Court did not address that denial. And third, as to Geico Indemnity, we believe the Court erred because it ignored the fact that it charged Mr. Edo more than he would have been charged if he would have had a higher credit score. Let me explain how these entities are structured. It's somewhat similar to State Farm Mutual. There is a parent organization called Government Employees Insurance Company. That company is the operating company. It is also the decision maker. Underneath it, there are two companies, one that's called Geico General, which issues preferred policies, and one called Geico Indemnity, which issues standard policies. Geico Indemnity is generally more expensive than Geico General. Now, when Mr. Edo wanted insurance, he called a toll-free number, 1-800-GO-GEICO. You may have seen the advertisements with the little gecko running around. When he called, he spoke to a Government Employees employee. All the employees are employees of Government Employees, the top entity. That Government Employees employee pushed a button on the computer system owned by the Government Employees company. That computer system also has an acronym. In this case, it's called a CICAU, Computer Assisted Underwriting System. When they pushed the button, the computer system obtained an insurance score from TransUnion and put it into the CAU system and the agreement between TransUnion and Government Employees. That was who the agreement was between. Government Employees presumably had a permissible purpose for obtaining that information. As Mr. Wegman described, there's kind of two bookends here. The Fair Credit Reporting Act allows you to use this private information, but if you do use it and you take an adverse action, an obligation arrives. We believe that based in part on the credit information, Mr. Edo was placed into Geico Indemnity, the standard carrier, rather than Geico General, the preferred carrier, which has the best rates. Now, the District Court ruled without oral argument that Mr. Edo did not have standing to bring a claim against Government Employees, the operating company, because Government Employees only issued insurance to actual Government Employees, and Mr. Edo wasn't a Government Employee. We believe the District Court erred because it was so focused on this only the issuing party, only the corporation that issues the insurance can take an adverse action. It ignored our argument that the operating company takes the adverse action when it places the individual in the… Now, here are you seeking to hold all three, or just the decision maker and the signatory company? Initially, we believe that the operating entity was the one that took the adverse action. Judge Brown ruled that… That's Government Employees? That's Government Employees. Okay, and Geico Indemnity is the signatory to the policy? Yes. Are you asking that both of those be held? Yes, we're asking that all three. What about Geico General, which is the party with a lower rate that didn't get the contract? You're also asking they be held? Yes, because they denied coverage. Okay. Now, you're satisfied with one notice, I assume? Yes. Okay. And joint liability? Yes. Joint and several, I'd say. Joint and several. I don't think we have to reach that here, but I think… No, I'm just trying to understand what the practical impact of holding more than one company is, whether it really matters. Do you care if all three companies are listed on the notice? I think it's important for the consumer to know who's taking the adverse action, and I think if all three of them have taken an adverse action, they should be listed. I think practically what you see in the notices that are actually sent out, in this case there was no notice, but in cases where the notices are actually sent out, all the companies under the umbrellas are listed, just so they don't have to have more than one notice. It's not that big of a… In this case, you've sued all three of them. There's no problem about somebody being missing. There's no impact on the litigation as such as to whether it's one, two, or three people who are liable, if somebody's liable. There's no impact on the litigation. What I mean is we don't have problems about there being a chance of not having sued at least one corrective act. Right. Well, I think it may have an impact on the size of the class eventually. Why? Because I think that the parent corporation makes decisions with respect to everybody, all policies issued where GEICO indemnity would only have taken an adverse action, under their theory of the case, with respect to the policies it issued. What is the theory on which, in terms of the conversation around the last case, on what theory would indemnity be responsible for having charged an increased rate? Because the defendants have admitted that if Mr. Ito had the theoretically highest insurance score, GEICO would have placed him in GEICO General Insurance Company, which has lower premiums. I understand that. So why is indemnity responsible for that? Because it's charging Mr. Ito more. We think that the deciding corporation. This is all a strange little showcase, but indemnity, as I understand it, didn't decide where to place him. It was general or government employees that decided where to place him. Yes, Your Honor. And it was arguably casualty that turned him down. But what did indemnity do? This gets to the point we were talking about in the State Farm Mutual case. The defendants will contend that indemnity didn't do nothing. Let's forget what the defendants are contending. I'm trying to understand who took an adverse action. I want to know what adverse action did indemnity take? Indemnity charged that Mr. Ito more. He could have been put into a different company, but he wasn't. Could it have put him into a different company? It could not have put him into a different company. Indemnity couldn't have offered him a better rate. Indemnity could not have offered him... They gave him the best rate they could based on the credits. I guess the question is, why is indemnity a party to this action? Because indemnity was the issuing party. It issued the policy. Well, all we seem to be suggesting is that it isn't true that the issuing party is always responsible. If the issuing party, and so if one assumes that somebody ought to be responsible, this doesn't seem like the right thing. Well, the rate it charged was based on an impermissible factor. I'm sorry? The rate it charged was based on an impermissible factor if it doesn't send the notice. It can't charge him that rate unless it sends him a notice. We believe that it should have sent the notice if it charged a rate less than the... And that... What? It charged a rate that was based on the credit rating and the alternative. Could it have referred the policy the way, in the last case we heard, if you get a particular credit rating, then you get referred over? I think... Is that true here? Could this company, the signatory company, have said, oh, you've got a perfect rate, you are referred back to our parent company? Again, because it doesn't have any employees, I'm not sure how it would do that. But assuming that the... Well, maybe the computer does it. If the computer did it... Here, let everybody progress. If they were to obtain correct information, for example, let's say Mr. Ito had a real credit score, should have been a credit score of 725, but because of identity theft, he was knocked down to 500. But if government employees was a proper defendant, that would be taken care of. If government employees was a proper defendant, correct. Yes, it would. So you don't really need both of them, and the theories to hold both of them are kind of contrary. That's why we originally sued the operating companies in these actions, is because we believe they take the adverse actions. They're the ones that are in the position to sort out where everybody goes. They're the ones that are in the position to say if a credit score is higher than it shows up. The one problem you don't want is to get up to a higher court, whether this one or the next, and then have them say, oh, well, that's not the right one. It's the signatory company. So you're safer if you get them all, and then sooner or later somebody will knock out one or the other, maybe. Yes, yes. Who knows which one. Yes. Some people might think you should only sue the signatory. Others might think you should only sue the parent. Yes. Just depends on who you draw. Yes. I see my time is up. All right. Well, we'll continue, I'm sure. Good morning, Your Honors. I'm Christopher Van Gundy, Baker McKenzie for the GEICO entities, which, by the way, are affiliates. They're not in a parent-subsidiary relationship. The questions that are being asked now go to which entity you should send a notice. Even though we've been going two and a half hours here, I would urge the panel to keep a fresh mind and look at the facts here in GEICO. And, for example, Judge Reinhart mentioned that perhaps what we need to do is isolate the use of this credit information, and that's exactly what happened here. When Mr. Ito called up a GEICO 800 number, he got a sales counselor who took all the standard underwriting information, the type of vehicle where he lives. He then gave Mr. Ito a chance to bar his obtaining the credit information. Mr. Ito did not bar it, basically said go ahead. And two runs were done with our underwriting system. We call it CAU, computer-assisted underwriting. But two runs were done. The sales counselor doesn't see this. It just happens. One run is with use of his actual credit information, and then he's given a company-tier placement. And another run is as if the credit information had not been used at all. The credit factor here was isolated. I don't understand. That's very confusing. Okay. What do you mean by as if it hadn't been used at all? I think it's on page 13 of the opening briefs. It's in our briefs. There's a use of a neutral credit score. That's not the same as if it wasn't used at all because there's really no way to, as I understand it, you can correct me. Since your rates in general incorporate credit considerations, a neutral credit rating is not no credit rating. It's neutral credit. And it's not neutral. It's average, as I understand it. Right. It's as if the person has said no. My understanding is that the person said no, please don't pull my credit information. Then these are weighted factors. Something has to be plugged in. They're neutral scores. Because you don't get the best rate if you say that. They don't get the best rate in the sense that there is some hypothetical person out there, just like Mr. Ado, who has perfect credit. That hypothetical person with perfect credit would have been placed in GEICO general. But we're looking at Mr. Ado if he had said yes and if he had said no. He said no, don't use the credit information. He's still got GEICO indemnity. The factor was isolated. He wasn't charged a high. Because a phantom person would have been charged less doesn't mean he paid more based on the use of his credit information. He's in the same position as if he had said no. But isn't this just a variant of the no report situation? You are essentially using the absence of a credit report either because he isn't using it or because you're pulling it from the calculation as negative as compared to somebody with good credit. As I understood that discussion, there was talk about, well, you know, if there's no credit at all, maybe that means something. The fact there's no credit at all means that there might be something wrong. I don't know how it relates to weighted factors and averages. What I understand is that, and I think the record is unconverted, that this is the case, and that's why I said I'm trying to breathe some fresh debate back into this. This is a case where it's simply he said no, don't use it, sorry. He could have the world's best credit. He just doesn't like it. And then you treat him as if he had average credit. We treat him as if he had just said no. Well, what does that mean? That means he gets the rate he would get if his credit rating were merely average. Well, you know, when we're talking about running numbers, that would only be relevant if he had the best score. The only facts here are that if he had the best score, he would have gotten GEICO General. Here, he's treated just as anyone else in the situation with the credit. He's treated as himself with better credit. I guess to put it another way, if someone calls up and says, please don't look at my credit information, then would the rule be that the company would have to guess, the company would still have to do a run with perfect credit, issue a notice even though the person said don't use my credit information at all? Probably not because the statute only kicks in if they went and got a credit report.  Here, we got a credit report and it had no – The statute doesn't kick in. Excuse me, I'm sorry. The statute simply doesn't kick in. Right. We would say the statute doesn't kick in here either because there was no impact on him. He got the same – he's in the same position as if he had said no. The fact that we took a peek at the credit score is of no moment. The statute talks about adverse action. There was no impact. There was, therefore, no adverse action. Let me just understand your facts aside from the concept. Right. The reason there was no adverse action in your view was that because he had average credit, he was treated as if he had average credit. Is that why? I don't know. There seems to be implied in there a challenge that there's something wrong with the neutral score. It really was a neutral score. No, no, no. I'm just trying to understand that he – Okay. The facts of this case are that he had average credit. That there was a calculus, a mathematical calculus that basically a number needs to be – Let me try it this way. Okay. Did they go and get a credit report for him, and it turned out that his credit report placed him in this big middle ground? Is that what happened? What happened was that if he had said no, the neutral score – it was plugged in there. The neutral score was plugged in there. Why was the neutral score plugged in? Because the company tier placement is just based on the addition of weighted factors. These factors assigned a number. They're added up. As I understand it, the number's looked at. And then the decision's made Geico General, Geico Indemnity, and then there's actually a substandard insurer here, Geico Casualty. They're not before the court. So if someone calls up and says, No, I'm a real private person. I just don't want you to look at it at all. A number has to be plugged in there. And I think the question for the court is, Do we have to plug in the theoretically best number? I don't think the statutory language – A number that's plugged in there that's been termed to be neutral, and no one's ever challenged the – No. The credit report was looked at. I don't understand why we talk about if somebody says no. Because – Maybe for comparative things. But we're talking about people who have credit reports. And you take into consideration their credit report. And then what you're trying to then say is, Well, what would we have given him? And you say we should compare it with, What would we do if he didn't have a credit report? Instead of saying, which is the alternative, What would we do if he had a good credit report? That's the choice. The option you urge is you say, Well, suppose he'd been somebody who declined to have a credit report. We compare him to that person. And if he's treated as well as that, that's fine. And the other argument is, No, you treat him compared to somebody who had a really good credit report. If he's not doing as well, then he's being penalized. And those are the two ways to look at it. Yes, Your Honor, except I would say that the way this has been queued up is that we're supposed to look at the best, not at a good. He was placed in standard, not substandard. In efforts, yeah. Right. And again, the statute says, Did you take an adverse action? Was there an action adverse to you? The factor was isolated. There's a neutral score. The neutrality of that score was never challenged. Let's talk about the purpose of the statute. If I walk into an insurance company, as far as I know, I've paid every bill I've ever gotten. I do have perfect credit. That's what I do. And I say, I want to get auto insurance. And the person says to me, Well, unfortunately, you can't get the best insurance after they run the numbers. You have to get this second level insurance. Why? Because you have bad credit. And I say, I've never heard I have bad credit. And I go check it out, and it turns out that I don't have bad credit. That was a mistake. Isn't that what the statute is trying to deal with? I think the statute said, We want you to check because it will make a difference. In Mr. Ado's case, it wouldn't have made a difference. It would have made a difference if he thought he had, as far as he knew, we had perfect credit. And it turns out that the insurance company has him down to something else. There's certainly that difference. Well, then the purpose of the statute is to make sure that everyone who has less than perfect credit gets Everybody who has perfect credit thinks they have and should have. Right. Then I guess the purpose of the statute in that case would be, Well, everyone who has less than perfect credit has to get a notice. We think the statute is more basing that if someone's suffering an adverse action. The number is plugged in there. But it's an adverse action as to me as an individual. If I am being treated as if I had bad credit when I had good credit. Or being treated as if being average. If I have better than average credit. Then that would be comparing you to a hypothetical person with exactly. My real self. In fact, really, I have perfect credit. Right. Well, that's what it is. It's not the issue was queued up. It's not that he had bad credit versus good or good and better. It's average and better. Right. You're presuming that somebody is no better than average. And if I say I didn't get class one insurance. I got class two because I have only average credit. That's the kind of thing where I would think the statute says, Well, you're entitled to a notice. It had an effect on you. You were classified as average. And because of your credit report. That's a hypothetical. Here, we were looking at the perfect credit situation. We don't even know if this person exists. I guess I'm out of time. I would just like to notice that, at least in terms of willfulness, obviously this is not only a question of first impression. But we did have, we believe, reasonable procedures in place. We tried our best to have a reasonable compliance. There's no factual debate about this. Not even about the neutral credit score. And we would ask that, at a minimum, the court be affirmed on that basis alone. Thank you. Okay. Your Honor, I think I've used all my time. But I would like to respond to the willfulness. All right. We'll give you the minute for the last case. Thank you. With respect to the willfulness issue, I wanted to make sure that the court understood that the district court has denied motions for summary judgment on the willfulness issue. On the basis that it's a factual question under either standard, whether it's a reckless standard or a knowing standard. And in this case, we believe there was sufficient evidence to raise a question of fact as to whether GEICO, whether the GEICO companies willfully failed to provide an adverse action notice to Mr. Ito. Willfulness, by its nature, is a state of mind question. And we've cited cases in our brief that say that state of mind is generally a factual issue for the jury. And we believe that the district court has agreed with that. And particularly in this case, GEICO previously, prior to 1999, it gave notice to everyone that didn't receive the best rate. They changed it in order to save postage costs when they came up with this new system of this hypothetical average. The statute doesn't require that there be any postage costs. I'm sorry? The statute doesn't require that there be any postage costs, right? It doesn't have to be a written notice. That's correct. That's correct. And the other thing is that the FTC has consistently posted information for these insurance companies on what the expectations are. And so we think there's sufficient evidence of willfulness to go to the jury. Thank you. Thank you. The next case. And the last case for the morning is Burr versus Safeco. Good morning again, Your Honor. Scott Shore.
judges: Reinhardt, Berzon, Bybee